**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JAMES R.[1]                                                    Case No. 2:22-cv-3667

                    Plaintiff,

v.                                                             Bowman, M.J.


COMMISSIONER OF SOCIAL SECURITY,

                    Defendants.

**MEMORANDUM OF OPINION AND ORDER**

Plaintiff James R. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents one claim of error, which the Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be **AFFIRMED**, because it is supported by substantial evidence in the administrative record. The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).

**I.  Summary of Administrative Record**

On March 19, 2020, Plaintiff filed an application for Disability Insurance Benefits ("DIB") alleging he became disabled on February 4, 2019, based upon a combination of physical and mental impairments. After his claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ").  At a telephonic hearing held on June 3, 2021 Plaintiff appeared with counsel and gave testimony before ALJ Gregory Kenyon. Vocational Expert Karen

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

Schneider also appeared by telephone. On July 29, 2021, the ALJ issued a written decision, concluding that Plaintiff was not disabled.  (Tr. 33-51).

Plaintiff was born on February 7, 1981 and was 38 years old on the alleged disability on set date. (Tr. 49). He has a high school education and past relevant work as a construction worker, a light truck driver, tow truck operator and forklift operator. Id.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "lumbosacral degenerative disc disease, cervical degenerative disc disease, degenerative joint disease of the knees, obesity, depression, anxiety, and posttraumatic stress disorder (PTSD). (Tr. 36). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work subject to the following limitations:

> (1) occasionally crouching, crawling, kneeling, stooping, and climbing ramps and stairs; (2) no climbing of ladders, ropes, or scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) occasional overhead reaching; (5) performing simple, routine, and repetitive tasks; (6) occasional superficial contact with coworkers and supervisors with "superficial" defined as being able to receive simple instructions, ask simple questions, and receive performance appraisals but as being unable to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts; (7) no public contact; (8) no fast-paced work or jobs which involve strict production quotas; and (9) limited to jobs which involve very little, if any, change in the job duties or the work routine from one day to the next.

(Tr. 39).

Based upon his RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could not perform his prior work, but could perform other jobs that exist in significant numbers in the national economy, including routing clerk, mail clerk, and

2

merchandise marker. (Tr. 50). Accordingly, the ALJ determined that Plaintiff is not under

disability, as defined in the Social Security Regulations, and is not entitled to SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's

decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff

argues that the ALJ erred by failing to give controlling weight to the opinion of Plaintiff's

treating nurse practitioner. Upon close analysis, I conclude that Plaintiff's arguments are

not well-taken.

## II.     Analysis

## A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C.

§1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or

mental impairments that are both "medically determinable" and severe enough to prevent

the applicant from (1) performing his or her past job and (2) engaging in "substantial

gainful activity" that is available in the regional or national economies. *See Bowen v. City

of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's

first inquiry is to determine whether the ALJ's non-disability finding is supported by

substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation

omitted). In conducting this review, the court should consider the record as a whole.

*Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports

the ALJ's denial of benefits, then that finding must be affirmed, even if substantial

evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35

F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or for disability

benefits, the Social Security Agency is guided by the following sequential benefits

analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial

gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's

impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's

impairments, singly or in combination, meet or equal a Listing in the Listing of

Impairments; at Step 4, the Commissioner determines whether or not the claimant can

still perform his or her past relevant work; and finally, at Step 5, if it is established that

claimant can no longer perform his or her past relevant work, the burden of proof shifts to

the agency to determine whether a significant number of other jobs which the claimant

can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*,

459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d

525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520,

416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is

entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must

present sufficient evidence to show that, during the relevant time period, he suffered an

impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

### B. The ALJ's Decision is supported by Substantial Evidence

For Plaintiff's sole assignment of error, Plaintiff argues that the ALJ did not properly evaluate the opinion of treating nurse practitioner, Ms. Winters, in assessing his RFC. Plaintiff's contention lacks merit.

Because Plaintiff filed for disability benefits after March 27, 2017, the ALJ properly determined that the recent revised set of regulations for evaluating medical evidence applies to this matter.  Under the revised regulations, the ALJ cannot defer or give any specific evidentiary weight, including controlling weight, to medical opinions, including those from the claimant's medical sources. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must decide whether a medical opinion is persuasive, considering several factors, including supportability and consistency, which the ALJ must discuss in his decision. 20 C.F.R. § 404.1520c; *see also Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *1 (6th Cir. Dec. 1, 2022).

Social Security Ruling 06-3p clarifies that although some treating sources (such as nurse practitioners) are not considered "acceptable medical sources" by 20 C.F.R. §404.1527, they are other medical sources that should be considered under relevant factors. SSR 06-3p.

As the Sixth Circuit has confirmed, as long as the ALJ's decision, when read as a whole, shows that he substantively considered the supportability and consistency factors, the ALJ's decision must be affirmed. *See Chicora v. Comm'r of Soc. Sec.*, 852 F. App'x 968, 970 (6th Cir. 2021) ("The ALJ's explanation goes directly to the supportability and

consistency factors. The ALJ cited specific statements in Dr. Castillo's own treatment notes and examination findings that fail to support her opinion . . ."); *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014). (recognizing that the ALJ's decision should be read as a whole when determining whether his consideration of the opinion evidence was consistent with the regulations). Further, as long as substantial evidence supports the ALJ's conclusion that a medical opinion was unpersuasive, any arguments as to evidence supporting other conclusions the ALJ could have made "are a veiled attempt to have [the Court] reweigh the evidence," which the Court may not do. *See Nasser*, 2022 WL 17348838, at *2.

As the Sixth Circuit explained, what weight the regulatory factors of consistency and supportability carry in determining the persuasiveness of an opinion "is not something that [the Court] may resolve." *Id*. citing *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) ("The Secretary, and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly.").

Here, in evaluating Plaintiff's RFC, the ALJ found that the "opinions of Ms. Amy Winter, the claimants primary care nurse practitioner, are not persuasive…." (Tr. 48). In so concluding, the ALJ noted that in May 2019, Ms. Winter opined the claimant had a limited ability to lift, twist, bend, stand, climb, and walk, which were expected to last eight to twelve weeks. Ms. Winter further noted the Plaintiff was limited to no climbing, no shifting equipment with the right or left leg, and no prolonged standing.  The ALJ further noted that Ms. Winter continued to complete the forms with almost identical responses but with changes in dates through the end of the record.  (Tr. 48). Some forms clarify that sitting, bending, and sitting should be limited to thirty minutes at a time (Tr. 48 citing exs.

8F/10). In light of the foregoing, the ALJ determined that the opinions of Ms. Winter are not supported by or consistent with the record, which demonstrates significant improvement in subjective complaints with physical therapy, along with adequate functioning on examinations. Id. The ALJ's decision is substantially supported in his regard.

Namely, the record indicates that Plaintiff generally presented with relatively good strength, which demonstrates better functioning than opined. (Tr. 48, citing. Exs 3F/80-81; 4F/16, 44, 66; and 9F/13, 307-308, 432, 443). The ALJ further noted that few, if any, of his medical records reflect the use of an assistive device, which also demonstrates better functioning than opined. (Tr.48; citing exhs 1F-11F). In this regard, imaging studies generally show mild, and no more than moderate, abnormalities. (Tr.48; citing exs. 2F/36, 45-51; 3F/105; 5F/85, 88-89; and 9F/201-202, 319, 446, 459). Additionally, the ALJ found that even Ms. Winters' forms indicate that the limitations should have only been temporary (Tr. 48, citing exs. 3F and 8F).

Plaintiff, however, argues that the ALJ's evaluation of Ms. Winter failed to properly address the consistency and supportability factors outlined in 20 C.F.R. § 404.1520c(c)(1)-(2). The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical

sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2). As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)...the more persuasive the medical opinions...will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s)...is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ...will be." 20 C.F.R. § 404.1520c(c)(2). In other words, supportability addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.).

Consistency, by contrast, requires the ALJ to compare the medical opinion at issue to "*other* medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023). Because they are the most

important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them." *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulation. *Id*.

Here, Plaintiff argues that the ALJ failed to discuss the support Ms. Winters provided for her opinions. Thus, Plaintiff contends that the ALJ merely cited treatment notes that documented normal examination findings and significant improvement in physical therapy. Plaintiff further contends that Ms. Winter provided ample support for her opinions. With respect to consistency, Plaintiff argues that the ALJ failed to explain how consistent, or inconsistent, Ms. Winter's opinions were with the record evidence. Plaintiff's contentions lack merit.

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. See *Casey v. Secretary of Health and Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993). Here, the ALJ's decision was not outside of the permissible "zone of choice" that grants ALJs discretion to make findings without "interference by the courts*." Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). See also *Ulman v. Comm'r of Soc. Sec.*,

693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess."); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("As long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion.").

Here, the ALJ properly considered the supportability factor. Namely, the ALJ's decision indicates that he considered that the forms completed by Ms. Winter had "almost identical responses but with changes in dates through the end of the record." (Tr. 48). The ALJ also noted that Ms. Winter's treatment notes indicated that Plaintiff presented with relatively good functioning on examinations, including good strength. (Tr. 48 citing Exhs. 1F-11F). As noted by the Commissioner, the exhibits cited by the ALJ in support of this statement showed some abnormal exam findings such as a limping gait, tenderness or decreased range of motion involving the neck, elbows, wrists, hips, knees, and a right toe, but were normal otherwise showing no tenderness, swelling, effusion or limited range of motion on musculoskeletal exam, mostly normal neurological findings including normal motor strength and sensations, ambulation without assistance, no antalgic gait, and generally "no limitations." (Tr. at 48, 323-24, 340-41, 382-83, 396, 400, 402, 405-406, 409-410, 412, 415-16, 418-19, 421, 424, 426-27, 429, 432, 445, 504-505, 570, 642, 722-23, 732-33, 973, 1012-13, 1141-42, 1144, 1152, 1154, 1157-58, 1178, 1184, 1330, 1484, 1505, 1540, 1585, 1591, 1596, 1619, 1622, 1726, 1729, 1783-84, 1799-1800, 1804-1805).

The ALJ further noted that few, if any, of Plaintiff's medical records reflected the use of an assistive device, which also demonstrated better functioning than Ms. Winter's

opined. (Tr. 48; see also Tr. 566, 583, 638, 677, 1008, 1037, 1295, 1330, 1417, 1505, 1524, 1585, 1619, 1622). The ALJ also indicated that the imaging studies generally showed mild, and no more than moderate, abnormalities. (Tr. 48, 317, 326-32, 440, 1231, 1234-35, 1602, 1729, 1742). Additionally, the ALJ noted that even Ms. Winter's forms indicated that the limitations should have only been temporary and not permanent. (Tr. 48).

The ALJ also properly determined that Ms. Winter's findings were not consistent with the record.  (Tr. 48).  In this regard, the ALJ noted that the record demonstrated significant improvement in subjective complaints with physical therapy, along with adequate functioning on examinations. Id.   Moreover, as detailed by the Commissioner, earlier in his decision, the ALJ explained Plaintiff's treatment history, exam findings, and imaging studies in significant detail, which contradicted Ms. Winters' opinions (Tr. at 40-45). See *Bledsoe v. Barnhart,* 165 F.App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step-three determination, and finding no need to require the ALJ to "spell out every fact a second time").

The ALJ also properly considered Plaintiff's daily living activities and functional capabilities in his decision when assessing Plaintiff's RFC and therefore in evaluating Ms. Winters' opinions (Tr.. at 46-47). (See *France v. Astrue*, No. 1:11-CV-184, 2012 WL 2913286, at *6 (S.D. Ohio July 17, 2012), *report and recommendation adopted,* No. 1:11-CV-184, 2012 WL 3731373 (S.D. Ohio Aug. 28, 2012) (the ALJ properly discounted Dr. Martinez's assessment because his limitations were inconsistent with Plaintiff's own testimony and reported daily activities). In this regard, the ALJ noted that in May 2019,

11

Plaintiff was using a dirt bike (Tr. at 46, 339). He also rode a bike with his daughter that month and reported it helped dissipate his knee pain. (Tr. at 46, 1111).

At his September 2020 psychological consultative examination, Plaintiff reported he was able to drive and completed household chores without significant difficulties, and occasionally saw friends. (Tr. 46-47, 1256). The October 2020 treatment notes indicated that he was still riding a motorcycle. (Tr.  47, 1590).  Additionally, the February 2021 treatment notes indicated that he was riding his motorcycle, plowing snow and walking on the treadmill for exercise. (Tr. 47, 1751).  The ALJ further noted that at the hearing, Plaintiff indicated he lost weight in part due to exercise. (Tr  47, 61). Such activities are inconsistent with the limitations Ms. Winter opined and supported the ALJ's RFC finding. See *Rottmann v. Comm'r of Soc. Sec.*, 2020 WL 3397744, at *3 (6th Cir. June 19, 2020) ("We therefore agree with the district court that the inconsistencies between Rottmann's self-reported activities and the treating physicians' medical reports provide substantial evidence to support the ALJ's findings.").

Additionally, as noted by the Commissioner, the ALJ properly adopted the findings of two state agency medical consultants, Elizabeth Das, M.D., and Steve McKee, M.D., as consistent with and supported by the evidence of record.  (Tr. at 47, 91-93, 101-102)). See 20 C.F.R. § 404.1513a(b)(1); SSR 17-2p, 2017 WL 3928306, at *3 (State agency medical consultants are "highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act"). Namely, Drs. Das and McKee reviewed the evidence of record in August 2020 and January 2021 respectively, and opined that Plaintiff was able to perform a reduced range of light work with occasional postural activities and occasional overhead lifting. (Tr. 47, 91-93, 101-102).  Such findings

were inconsistent with Ms. Winters' extreme limitations and therefore support the ALJ's RFC determination.

This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.,* 884 F.2d 241, 245 (6th Cir. 1989); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  Here, substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled within the meaning of the Social Security Act.

III.    **Conclusion**

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and is **AFFIRMED**, and that this case is **CLOSED**.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

13